DECISION
{¶ 1} Relator, Sauder Woodworking Company, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, which granted permanent total *Page 2 
disability ("PTD") compensation to respondent, Paul D. Crocker ("claimant"), and ordering the commission to find that claimant is not entitled to such compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.)
 {¶ 3} Relator did not object to the magistrate's findings of fact, and we adopt them as our own, with one minor correction. The reference to "October 25, 2003" at ¶ 22 should read "April 25, 2003." That correction has no substantive impact on the magistrate's findings of fact or conclusions of law.
 {¶ 4} Relator submitted two objections to the magistrate's conclusions of law. First, relator argues that the magistrate erred in concluding that the commission could rely on the medical reports of Allan G. Clague, M.D., to support the granting of PTD benefits. However, we agree with the magistrate's analysis and conclusions on this issue. While Dr. Clague acknowledged that claimant's condition may improve, he unequivocally expressed his opinion that, despite these potential improvements, claimant is, and would remain, permanently and totally disabled. Therefore, we overrule relator's first objection.
 {¶ 5} Second, relator argues that the magistrate erred in failing to follow "the Supreme Court of Ohio's directive that the granting of [PTD] benefits should be a `compensation of last resort.'" In support, relator cites State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250,253, in which the Ohio Supreme Court stated: "We view permanent total disability compensation as compensation of last resort, to be *Page 3 
awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed." Relator's specific argument is that PTD benefits are not the "last resort" here because Dr. Clague's medical reports indicate that claimant's condition is improving, and because claimant has refused to participate in the vocational rehabilitation services relator has offered to him.
 {¶ 6} As reflected in our prior discussion, however, we reject relator's argument that the commission improperly relied on Dr. Clague's report. In addition, we note that the commission is the final evaluator of non-medical factors. State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266. Having determined that claimant is permanently and totally disabled based on medical evidence alone, it was not an abuse of discretion for the commission to award PTD benefits without first requiring claimant to participate in rehabilitation. Therefore, we overrule relator's second objection.
 {¶ 7} Having overruled relator's objections and finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, with the exception of the typographical correction noted above. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled, writ of mandamus denied.
 BROWN and TYACK, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 8} Relator, Sauder Woodworking Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total *Page 5 
disability ("PTD") compensation to respondent Paul D. Crocker ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact: {¶ 9} 1. Claimant sustained an industrial injury while employed with relator, a self-insured employer under Ohio's workers' compensation laws. Claimant began his employment with relator in March 1993. Most of the work claimant performed involved repetitive motions.
 {¶ 10} 2. Around December 1998, claimant developed pain in his lower neck region. Because the neck pain increased over the next two months, on February 18, 1999, claimant saw his family physician who then referred him to a neurologist for diagnostic testing. February 18, 1999 is the official date of claimant's injury in this industrial claim. Relator initially certified the claim for "bilateral carpel tunnel syndrome."
 {¶ 11} 3. In 1999, claimant underwent carpal tunnel release surgery on both hands.
 {¶ 12} 4. Claimant's claim was subsequently allowed for "bilateral reflex sympathetic dystrophy, upper limb."
 {¶ 13} 5. Claimant returned to light duty work with relator following his carpal tunnel releases. However, around November 2000, he was taken off work by his doctor. Claimant began receiving temporary total disability ("TTD") compensation from relator.
 {¶ 14} 6. On January 15, 2003, claimant was examined at relator's request by Gregory A. Ornella, M.D., who specializes in occupational medicine. Dr. Ornella concluded that claimant's condition had reached maximum medical improvement ("MMI"). *Page 6 
 {¶ 15} 7. On February 3, 2003, relator moved to terminate TTD compensation based upon Dr. Ornella's January 15, 2003 report.
 {¶ 16} 8. On February 17, 2003, claimant's treating neurologist, Allan G. Clague, M.D., wrote to claimant's counsel indicating that, in his opinion, claimant had not reached MM I and expected significant improvement to occur over time.
 {¶ 17} 9. Claimant's counsel asked Dr. Clague to review Dr. Ornella's January 15, 2003 report and respond in writing. In his response dated February 28, 2003, Dr. Clague again reiterated that he expected claimant to continue to show further improvement of his underlying neurological condition and that the goal was to further reduce the pain and swelling in claimant's upper extremities and increase the functional use of his upper extremities. Dr. Clague again stated that claimant had not reached MMI.
 {¶ 18} 10. On February 26, 2003, claimant moved for an R.C. 4123.57(B) scheduled-loss award for the alleged loss of use of his fingers of the left and right hands. Claimant cited Dr. Ornella's January 15, 2003 report wherein he noted the significant lack of movement which claimant had in his fingers.
 {¶ 19} 11. Following a March 7, 2003 hearing, a district hearing officer ("DHO") issued an order denying relator's February 2003 motion seeking to terminate claimant's TTD compensation based upon the February 28, 2003 report of Dr. Clague.
 {¶ 20} 12. Relator administratively appealed the DHO's order of March 7, 2003.
 {¶ 21} 13. Following an April 25, 2003 hearing before a staff hearing officer ("SHO"), the prior DHO's order was vacated. The SHO determined that claimant had reached MMI based upon Dr. Ornella's January 15, 2003 report. *Page 7 
 {¶ 22} 14. On [April] 25, 2003, the same SHO who heard the appeal from the DHO's order of March 7, 2003, also sat as a DHO and heard claimant's February 26, 2003 motion seeking an award for loss of use of the fingers of his hands. Following the April 25, 2003 hearing, the DHO issued an order granting claimant's motion for loss of use based upon the January 15, 2003 report of Dr. Ornella.
 {¶ 23} 15. Relator administratively appealed the order which granted claimant the R.C. 4123.57(B) award.
 {¶ 24} 16. At relator's request, claimant was examined by Thomas E. Lieser, M.D., who specializes in occupational and environmental medicine. In his June 3, 2003 report, Dr. Lieser concluded that claimant demonstrated no functional use of the left digits two, three, four, and five as they remain in a fixed, rigid position at all joints: MP, PIP, and DIP.
 {¶ 25} 17. In a report dated June 10, 2003, Dr. Clague responded to Dr. Lieser's report stating that claimant does not have ankylosis of any of the distal or proximal interphalangeal joints of the fingers of either hands.
 {¶ 26} 18. Following a June 19, 2003 hearing on relator's administrative appeal from the DHO's order of April 25, 2003, an SHO issued an order that vacated the DHO's award based upon the June 10, 2003 report of Dr. Clague.
 {¶ 27} 19. Claimant filed an administrative appeal from the SHO's order of June 19, 2003 and, on November 5, 2003, a commission deputy heard claimant's administrative appeal and affirmed the prior SHO's order. As such, based upon the June 10, 2003 report of Dr. Clague, the commission denied claimant's motion requesting the loss of use award for the various digits. *Page 8 
 {¶ 28} 20. On August 13, 2003, claimant filed a mandamus action in this court.
 {¶ 29} 21. In a decision rendered August 25, 2005 in 04AP-820, this court adopted the decision of its magistrate. In so doing, this court applied State ex rel. Zamora v. Indus. Comm. (1989), 45 Ohio St.3d 17, and its progeny and determined that the commission was precluded from relying upon Dr. Clague's June 10, 2003 report when it denied claimant's loss of use award. As the magistrate noted, the commission had terminated claimant's TTD compensation based upon Dr. Ornella's opinion that the industrial injury had reached MMI. In so doing, the commission had implicitly rejected the opinions expressed in Dr. Clague's February 17 and 28, 2003 reports that claimant's industrial injury had not reached MMI. Thereafter, noting that Dr. Clague's June 10, 2003 report was not in existence when the commission terminated TTD compensation based upon Dr. Ornella's report, this court, nevertheless, concluded that Zamora applied. This court noted that Dr. Clague's June 10, 2003 report simply reiterated the findings contained in his February 17 and 28, 2003 reports regarding MMI. Accordingly, the MMI opinion of Dr. Clague in his June 10, 2003 report had been effectively rejected when the commission accepted Dr. Ornella's opinion regarding MMI.
 {¶ 30} 22. This court's decision in 04AP-820 was appealed to the Supreme Court of Ohio as of right. In State ex rel. Crocker v. Indus.Comm., 111 Ohio St.3d 202, 2006-Ohio-5483, at ¶ 15 ("Crocker I"), the Supreme Court affirmed this court's decision and specifically noted:
 * * * In all three reports, Dr. Clague consistently issued the same opinion on the subject of further improvement: Crocker would get better with additional treatment. When Clague made that statement in February, it was deemed un-persuasive, and temporary total disability compensation was accordingly denied. When Dr. Clague made the statement in *Page 9 
June, the commission suddenly deemed it persuasive and used it to deny Crocker's loss-of-use application. This result is unfair and inappropriate. Dr. Clague's opinion on future improvement is either persuasive or it is not. The commission cannot have it both ways, particularly to Crocker's dual detriment.
 {¶ 31} 23. In the meantime, claimant filed an application for PTD compensation on February 6, 2004, stating that he had not worked in any capacity since November 2000. In support of his application for PTD compensation, claimant submitted three new reports from Dr. Clague. In those reports dated June 26, November 24, 2003, and January 5, 2004, Dr. Clague continued to note that claimant was experiencing slight improvements in his ability to move his fingers. However, in spite of the fact that Dr. Clague continued to be of the opinion that claimant would experience some improvement in his condition, a review of his June 26, November 24, 2003, and January 5, 2004 reports indicate that claimant's condition essentially remained the same. Specifically, the magistrate notes that Dr. Clague's findings upon physical examination remained essentially unchanged. Furthermore, Dr. Clague consistently noted that his objective with regards to his care of claimant continued to be attempting to reduce the intensity of his pain and discomfort as well as to reduce the swelling in his hands and to increase the mobility of his extremities. In spite of his goal, Dr. Clague noted, in all three reports:
 The prognosis in all such cases is poor and I expect this to be a totally disabling condition for the remainder of his lifetime. Certainly on the basis of his current clinical history and neurological examination Mr. Paul D. Crocker is totally and permanently medically disabled from carrying out any form of gainful employment for which he is qualified by education, training and/or experience. I never expect him to be able to carry out any type of gainful, productive activity throughout the remainder of his lifetime. *Page 10 
 {¶ 32} 24. Claimant was evaluated at the request of relator by Susan Rice, M.D., and at the request of the commission, by Harvey A. Popovich, M.D. Dr. Rice concluded that claimant was permanently disabled from his former occupation and that he would pose a vocational challenge; however, Dr. Rice concluded that claimant would be capable of participating in a vocational retraining program and believed that he could perform a job such as telemarketing from home with assistive technology. Dr. Popovich concluded that claimant's conditions had reached MMI, assessed a 58 percent whole person impairment, and concluded that claimant could perform at a sedentary level in spite of the fact that Dr. Popovich made the following findings:
 Mr. Crocker indicates he is unable to move his left shoulder, elbow, wrist and fingers two, three, four, and five. There is slight movement in the left thumb but the left hand and its digits are swollen and cool. Examination of the right upper extremity reveals normal range of motion in the thumb, index and middle fingers but ankylosis and tenderness of the fourth and fifth digits. Sensory testing is normal but strength is diminished bilaterally. Mr. Crocker's activities of daily living including work are limited by the allowed conditions of this claim.
 {¶ 33} 25. Three vocational reports were submitted as evidence. Two of the evaluators concluded that claimant was a poor candidate for rehabilitation and retraining and that it was unreasonable to expect that he would ever be able to return to work while one evaluator opined that with appropriate vocational retraining, claimant should be able to return to some form of sustained remunerative employment.
 {¶ 34} 26. Claimant's application seeking PTD compensation was heard before an SHO on September 21, 2004, and was granted. The SHO relied upon the June 26, November 24, 2003, and January 5, 2004 reports of Dr. Clague, and concluded: *Page 11 
 This Staff Hearing Officer does find the opinion of Allan G. Clague, M.D., a clinical neurologist specializing in the treatment of Reflex Sympathetic Dystrophy, to be persuasive. Therefore, after hearing, this adjudicator finds that the medical impairment resulting from the allowed conditions in claim #99-381344 prohibits the injured worker's return to his former position of employment, as well as prohibits the injured worker from performing any sustained remunerative employment.
 Therefore, the injured worker shall be, and hereby is, found to be permanently and totally disabled, without reference to the vocational factors listed in Paragraph (B) (3) of Industrial Commission Rule 4121-3-34, pursuant to Industrial Commission Rule 4121-3-34 (D) (2) (a).
 * * The starting date of permanent and total disability compensation is based upon the June 26, 2000 [sic] report from the injured worker's attending neurologist, Allan G. Clague, M.D.
 {¶ 35} 27. Relator's request for reconsideration was denied by order of the commission mailed December 8, 2004.
 {¶ 36} 28. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 37} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry *Page 12 Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 38} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 39} In this mandamus action, relator contends that the June 26, November 24, 2003, and January 5, 2004 reports of Dr. Clague do not constitute "some evidence" upon which the commission could rely for two reasons: (1) pursuant to the decision in Crocker I, the reports of Dr. Clague could not be relied upon to support an award of PTD compensation as it is "fundamentally inconsistent for the Court to conclude that Dr. Clague's opinions can be accepted for some purposes, but not for others"; and (2) because Dr. Clague continued to be of the opinion that claimant's condition was improving and would continue to improve, those reports cannot support an award of PTD compensation. Relator also argues that PTD compensation should be denied because claimant has not pursued rehabilitation. For the reasons that follow, it is this *Page 13 
magistrate's conclusion that relator's arguments lack merit and relator's request for a writ of mandamus should be denied.
 {¶ 40} Relator's first argument is that the reports of Dr. Clague upon which the commission relied to award claimant PTD compensation should have been removed from consideration pursuant to the court's application of Zamora in Crocker I. However, a simple review of the Supreme Court's final paragraph in Crocker I demonstrates that relator's argument lacks merit. As indicated previously, the Crocker I court stated:
 Contrary to appellants' representation, this result does not mean that once a doctor's opinion has been rejected, the commission can never rely on any future report from that doctor again. What the commission cannot do is accept the same doctor's opinion on one matter that it previously rejected. In this case, the uniformity of issues rendered the commission's reliance on Dr. Clague's June 10, 2003 report an abuse of discretion.
Id. at ¶ 16.
 {¶ 41} When the commission determined that claimant's allowed conditions had reached MMI, the commission relied upon the January 15, 2003 report of Dr. Ornella. As such, the commission rejected the February 17 and 28, 2003 reports of Dr. Clague. Thereafter, in later determining that claimant was not entitled to an award for the loss of use of his hands, the commission relied upon Dr. Clague's June 10, 2003 report which essentially reiterated the conclusion he had made in the February 17 and 28, 2003 reports. In Crocker I, the court held that because the commission had rejected Dr. Clague's opinion that claimant was not at MMI but would improve when it determined that claimant had reached MMI, the commission could not, thereafter, rely upon that same opinion, expressed in his June 10, 2003 report, to find that claimant did not have ankylosis and that his condition would improve when denying him an award for loss of *Page 14 
use of his hands. As the court noted, Dr. Clague had expressed the same opinion in all three reports and the commission could not reject that opinion at one level to terminate TTD compensation and then accept that same opinion later in denying him a loss of use award.
 {¶ 42} In examining all six reports from Dr. Clague, the magistrate specifically notes that in the February 17, 28, and June 10, 2003 reports, Dr. Clague never stated an opinion as to whether or not claimant was permanently and totally disabled or whether or not claimant would be able to return to any sustained remunerative employment. Instead, he opined that claimant had not reached MMI. In the later reports from Dr. Clague upon which the commission relied in granting him PTD compensation, Dr. Clague opined, for the first time, that claimant was permanently and totally disabled and unable to return to any sustained remunerative employment. As such, Dr. Clague rendered an opinion in those latter three reports which he had not indicated in the previous reports which the court found had been rejected by the commission. Zamora prohibits the commission from relying on a medical report that the commission had earlier found unpersuasive and is properly invoked when the commission tries to revive evidence that was previously deemed unpersuasive. When the Supreme Court appliedZamora in Crocker I, the court specifically noted that the third report of Dr. Clague dated June 10, 2003, expressed the exact same opinion which the commission had earlier rejected. For that reason, the court found that the principles espoused in Zamora did apply and that the commission could not rely upon that report when the opinion expressed therein had previously been rejected in earlier reports. *Page 15 
 {¶ 43} In the present case, in relying upon the latter three reports of Dr. Clague, the commission relied upon an opinion of Dr. Clague which he had not previously expressed. As such, that opinion had not previously been rejected by the commission and relator's argument thatZamora applied in this situation to bar those reports lacks merit.
 {¶ 44} Relator also argues that the reports of Dr. Clague upon which the commission relied in granting claimant PTD compensation do not constitute some evidence because Dr. Clague opined, in all three reports, that claimant's condition would continue to improve. Relator argues that, because Dr. Clague continued to opine that claimant's condition would improve, Dr. Clague was really saying that claimant's condition was not permanent. Therefore, relator contends that the commission abused its discretion by relying upon those reports.
 {¶ 45} In the SHO's order awarding claimant PTD compensation, the commission recognized that Dr. Clague continued to treat claimant because he believed that claimant's condition would continue to improve. Specifically, the commission's order notes the following:
 Dr. Clague then stated that his "objective in the care and treatment of Mr. Crocker continues to be that of attempting to reduce the intensity of his pain and discomfort, as well as to reduce the swelling in the hands and to increase the mobility of his extremities". However, unfortunately, Dr. Clague also stated that "the prognosis in all such cases is poor and I expect this to be a totally disabling condition for the remainder of his lifetime. Certainly, on the basis of his current clinical history and neurological examination, Mr. Paul D. Crocker is totally and permanently medically disabled from carrying out any form of gainful employment for which he is qualified by education, training and/or experience. I never expect him to be able to carry out any type of gainful, productive activity, throughout the remainder *Page 16 
of his lifetime." The aforesaid statement by Dr. Clague is a reiteration of the same state-ment from his prior narrative reports of November 24, 2003 and June 23, 2003.
 {¶ 46} The improvement that Dr. Clague was anticipating was minimal and directed more at increasing his comfort and not his functional abilities. The magistrate finds that this type of minimal improvement directed at increasing comfort does not invalidate the doctor's opinion that the claimant is permanently and totally disabled and unable to perform any sustained remunerative employment. Furthermore, a review of all three reports of Dr. Clague upon which the commission relied to grant him PTD compensation reveals that claimant's condition remained virtually unchanged in spite of ongoing treatment. In the fifth paragraph of all three reports, Dr. Clague noted his physical findings upon examination. Looking at those findings, which were essentially identical, the magistrate finds that the commission did not misinterpret Dr. Clague's reports and did not abuse its discretion when it relied upon those reports.
 {¶ 47} Lastly, relator points out that, at the hearing, vocational rehabilitation services were offered to claimant by relator, but claimant indicated that he was not willing to participate. Because claimant refused to participate in rehabilitation, relator contends that PTD compensation should be denied. See State ex rel. Bowling v. Natl.Can Corp. (1996), 77 Ohio St.3d 148.
 {¶ 48} Claimant responds by noting that the commission determined that he was permanently and totally disabled based solely upon the medical evidence without consideration to the nonmedical disability factors pursuant to State ex rel. Galion Mfg. Div. Dresser Industries, Inc. v.Haygood (1991), 60 Ohio St.3d 38. As such, claimant argues that the commission did not need to consider claimant's rehabilitation potential. *Page 17 
 {¶ 49} In the present case, vocational rehabilitation was offered and refused late in the game at a time when claimant's doctor opined that he was incapable of performing any sustained remunerative employment. The commission relied upon this evidence and concluded that claimant could not perform sustained remunerative employment.
 {¶ 50} As such, there was nothing to be gained from referring claimant for rehabilitation — the commission determined that there were no jobs claimant could perform. As such, the magistrate finds this argument not well-taken.
 {¶ 51} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in relying upon the reports of Dr. Clague to find that claimant was entitled to PTD compensation and this court should deny relator's request for a writ of mandamus.
 *Page 1